**MOUSTAKAS NELSON LLC**
Nikitas Moustakas, Esquire (PA ID. 336580)
Douglas M. Nelson, Esquire (PA ID. 311672)
Robert Hagerty, Esquire (PA ID. 43596)
E-mail: dnelson@mnlawllc.com
Phone: (856) 772-7800
255 Kings Highway East
Haddonfield, NJ 08033

*Attorneys for Plaintiff Universal Property Services Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNIVERSAL PROPERTY SERVICES INC.,<br><br>    Plaintiff,<br><br>v.<br><br>FRONT STREET DONUTS LLC, KAMLA CORPORATION, AMRUT KRISHNA, INC., BCPM ENTERPRISES LP, 5643 RIDGE AVENUE LLC, SIGMA HOSPITALITY GROUP LLC, CHANDRESH PATEL, PINANK PATEL, RAJ DOSHI, and PARAMJEET SINGH,<br><br>    Defendants. | CIVIL ACTION<br><br>NO. 2:25-CV-01837 |

## COMPLAINT

Plaintiff Universal Property Services Inc., by way of counsel, files this Complaint against Defendants Front Street Donuts LLC, Kamla Corporation, Amrut Krishna, Inc., BCPM Enterprises LP, 5643 Ridge Avenue LLC, Sigma Hospitality Group LLC, Chandresh Patel, Pinank Patel, Raj Doshi, and Paramjeet Singh, and alleges as follows:

1

**NATURE OF THE ACTION**

1. This is an action for breach of contract, unjust enrichment, promissory estoppel, tortious interference with contractual relationships, fraud, negligent misrepresentation, and other claims arising from Defendants' wrongful termination of contracts for Plaintiff to exclusively supply Defendants' three motor fuel service stations with motor fuel for a ten-year term – because Defendants found a cheaper alternative less than halfway through the contract term.

2. Plaintiff seeks damages resulting from Defendants' breaches and wrongful conduct and requests injunctive relief to prevent further irreparable harm, specifically to prevent Plaintiff from going out of business or losing its pledged real estate interests.

**THE PARTIES**

3. Plaintiff Universal Property Services Inc. ("Plaintiff") is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 1601 Princeton Avenue, Lawrenceville, NJ 08648.

4. Defendant Front Street Donuts LLC is a limited liability company formed under the laws of the Commonwealth of Pennsylvania with a principal office and registered office at 4625 E. Street Road, Unit B, Feasterville-Trevose, PA 19053.

5. Defendant Kamla Corporation is a corporation formed under the laws of the Commonwealth of Pennsylvania with a principal office and registered office at 4625 E. Street Road, Unit B, Feasterville-Trevose, PA 19053.

6. Defendant Amrut Krishna, Inc. is a corporation formed under the laws of the Commonwealth of Pennsylvania with a principal office and registered office at 4625 E. Street Road, Unit B, Feasterville-Trevose, PA 19053 (collectively, Defendants Front Street Donuts LLC, Kamla Corporation, and Amrut Krishna, Inc. are referred to as the "Station Defendants").

7. Defendant BCPM Enterprises LP is a limited partnership formed under the laws of the Commonwealth of Pennsylvania with a principal office and registered office at 4625 E. Street Road, Unit B, Feasterville-Trevose, PA 19053.

8. Defendant BCPM Enterprises LP is title owner of the real property located at 300 E. Erie Avenue, Philadelphia, PA, and the landlord of Kamla Corporation.

9. 5643 Ridge Avenue LLC is a limited liability company formed under the laws of the Commonwealth of Pennsylvania with a principal office and registered office at 4625 E. Street Road, Unit B, Feasterville-Trevose, PA 19053.

10. Defendant 5643 Ridge Avenue LLC is title owner of the real property located at 5643 Ridge Avenue, Philadelphia, PA, and the landlord of Front Street Donuts LLC (collectively, BCPM Enterprises LP and 5643 Ridge Avenue LLC are referred to as the "Landlord Defendants").

11. Sigma Hospitality Group LLC is a limited liability company formed under the laws of the Commonwealth of Pennsylvania with a principal office and registered office at 1950 Street Road, Suite 204, Bensalem, PA 19020 ("Sigma").

12. Chandresh Patel is an individual and a resident of Pennsylvania, residing at 2024 Trowbridge Drive, Newtown, PA 18940.

13. Pinank Patel is an individual and a resident of Pennsylvania, residing at 2033 Trowbridge Drive, Newtown, PA 18940.

14. Raj Doshi is an individual, and upon information and belief, a resident of Pennsylvania, with a principal business address at 4625 E. Street Road, Unit B, Feasterville-Trevose, PA 19053.

15. Paramjeet Singh is an individual, and upon information and belief, a resident of Pennsylvania, with a principal business address at 4625 E. Street Road, Unit B, Feasterville-Trevose, PA 19053 (collectively, Chandresh Patel, Pinank Patel, Raj Doshi, and Paramjeet Singh are

referred to as the "Individual Defendants", and with the Station Defendants, Landlord Defendants, and Sigma, the "Defendants").

16. Upon information and belief, and despite any corporate formalities and/or the use of different business entities, the Defendants operate as a single unified business with the following makeup:

    (a) Chandresh Patel is a principal and officer of Front Street Donuts LLC, Kamla Corporation, Amrut Krishna, Inc., BCPM Enterprises LP, 5643 Ridge Avenue LLC, and Sigma Hospitality Group LLC.

    (b) Pinank Patel is a principal and officer of Front Street Donuts LLC, Kamla Corporation, Amrut Krishna, Inc., 5643 Ridge Avenue LLC, and Sigma Hospitality Group LLC.

    (c) Raj Doshi is the Chief Financial Officer, and otherwise an officer and/or agent, of Sigma Hospitality Group LLC and the entities constituting the Station Defendants and Landlord Defendants.

    (d) Paramjeet Singh is a principal and officer and/or agent of Kamla Corporation, Amrut Krishna, Inc., 5643 Ridge Avenue LLC, and Sigma Hospitality Group LLC.

17. All acts, errors, and/or omissions of the Station Defendants were caused by or directed by the Landlord Defendants, Sigma, and/or the Individual Defendants.

**JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as there is complete diversity of citizenship between the parties.  Plaintiff is a corporation organized under the laws of New Jersey with its principal place of business in New Jersey, Defendants are entities organized under the laws of Pennsylvania with their principal places of business in

Pennsylvania or are individuals who are residents of Pennsylvania, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

19. This court has personal jurisdiction over the Station Defendants, Landlord Defendants, and Sigma because all Station Defendants, Landlord Defendants, and Sigma are entities organized under the laws of Pennsylvania with their principal places of business in Pennsylvania.

20. This court has personal jurisdiction over the Individual Defendants because all Individual Defendants are residents of Pennsylvania with their principal residences in Pennsylvania.

21. Further, this Court has personal jurisdiction over all Defendants because Defendants have sufficient minimum contacts with Pennsylvania.

22. Venue in this district is proper under 28 U.S.C. § 1391(b)(1) because all Defendants reside in this district and within this state.

23. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part and/or all of the events or omissions giving rise to the claims herein occurred in this district.

**FACTS**

*Plaintiff Supplies Motor Fuel Pursuant to Supply Contracts*

24. Plaintiff and Defendant Front Street Donuts LLC are parties to that certain Dealer Supply Agreement, under which Plaintiff exclusively supplies motor fuel to Defendant Front Street Donuts LLC's motor fuel service station located at 5643 Ridge Avenue, Philadelphia, PA. A true and correct copy of the Dealer Supply Agreement, and Addendum thereto, between Plaintiff and Defendant Front Street Donuts LLC is attached hereto as **Exhibit "A"** (the "FSD Contract").

25. Plaintiff and Defendant Kamla Corporation are parties to that certain Dealer Supply Agreement, under which Plaintiff exclusively supplies motor fuel to Defendant Kamla Corporation's motor fuel service station located at 300 E. Erie Avenue, Philadelphia, PA (the "KC Contract").

26. Plaintiff and Defendant Amrut Krishna, Inc. are parties to that certain Dealer Supply Agreement, under which Plaintiff exclusively supplies motor fuel to Defendant Amrut Krishna, Inc.'s motor fuel service station located Knights and Woodhaven Roads, Philadelphia, PA (the "AK Contract").

27. The FSD Contract, the KC Contract, and the AK Contract (collectively the "Supply Contracts") are substantially similar contracts and contain substantially similar terms.

28. Pursuant to the Supply Contracts, Plaintiff is to serve as the exclusive supplier of motor fuels to the Station Defendants for the entire ten-year term of the Supply Contracts.

29. Throughout the entire term of the Supply Contracts, Plaintiff has supplied and otherwise delivered motor fuel to the Station Defendants from Sunoco's terminals.

30. Throughout the entire term of the Supply Contracts, Plaintiff has supplied and otherwise delivered motor fuel to the Defendants on time, in the necessary amounts, and otherwise in compliance with the terms of the Supply Contracts.

### *Conoco® Branding of Defendants' Motor Fuel Service Stations*

31. Pursuant to a Trademark Licensee Agreement (the "TLA"), Plaintiff, through its affiliate, as licensee of Phillips 66 Company, was authorized to brand (also referred to in the industry as "imaging") the Station Defendants' service stations as Conoco® stations.

32. Defendants are not parties to the TLA.

33. Such branding authorization under the TLA does not include the requirement to supply or deliver Conoco®-branded motor fuels.

34. On or around July 1, 2024, Phillips 66 Company terminated the TLA, effective October 10, 2024. A true and correct copy of the July 1, 2024, termination letter is attached hereto as **Exhibit "B"**.

35. Notably, the termination of the TLA does not, and did not, result in a breach of the Supply Contracts.

36. As a result of the termination of the TLA, Plaintiff's, through its affiliate, license and authorization to brand the Station Defendants' service stations as Conoco® stations ended on October 10, 2024.

37. However, Plaintiff is permitted to rebrand and/or otherwise change the branding/imaging of the Station Defendants' service stations in Plaintiff's sole discretion.

38. The Supply Contracts specifically provide, in relevant part (emphases added):

(a) In Section XIV(a), that "[Station Defendants' service stations] shall be imaged [i.e. branded] in accordance with standards, policies and procedures required by **[Plaintiff]**, as may be amended from time to time".

(b) In Section XIV(c), that "[Station Defendants'] will use [Conoco® branding] only in accordance with the guidelines, policies, image programs, procedures, requirements, specifications and standards **issued by [Plaintiff]** or its licensors, as amended from time to time. . . **[Plaintiff] shall not be liable for the termination to any agreement between [Plaintiff and its affiliates] and [Phillips 66 Company] relating to the [Conoco® branding]**, howsoever terminated, and, in such event, [Station Defendants] shall immediately cease all use thereof."

7

(c) In Section XIV(d), "[Plaintiff] has **exclusive** discretion as to whether and in what manner [Conoco® branding] shall be displayed at the [Station Defendant's service station] and may enter the [Station Defendant's service station], at any time during or after the term hereof to erect or remove said [Conoco® branding] without any liability or obligation to [Defendants]."

(d) In Section XIV(k), that "[Plaintiff] retains at all times the right to change the brand at any time and substitute any of its other [brand imaging/branding] in their place. . ."

(e) In Section XXII(b) that "**[Plaintiff] reserves the right to change the brand at anytime . . .**"

(f) In Addendum, Article 2, that "if Motor Fuel is stored, advertise or sold at or from the [Station Defendant's service station], the Motor Fuel stored, advertised or sold shall be sold under the Brand designated by [Plaintiff] from time to time."

39. As such, and notwithstanding the termination of the TLA, Plaintiff has the authority under the Supply Contracts to provide Station Defendants with non-Conoco®-branded motor fuels and to otherwise de-brand or rebrand Station Defendants' service stations in its discretion.

40. Prior to, and after, October 10, 2024, Plaintiff made numerous attempts to rebrand the Station Defendants' services stations.  Plaintiff was rebuffed in such efforts and otherwise refused access to and/or the ability to de-brand or rebrand the Station Defendants' service stations.

41. Notably, the termination of the TLA affected eleven service stations in total.  Plaintiff successfully de-branded and/or rebranded eight of the service stations, with only the Station Defendants' three service stations remaining Conoco® branded beyond the termination date.  A true and correct copy of a screenshot reflecting a successful de-brand from Conoco® is attached hereto as **Exhibit "C"**.

42. Moreover, Plaintiff's violation or termination of the TLA would not result in a violation or trigger a breach of the Supply Contracts.

43. Thus, and notwithstanding the Plaintiff's attempts to de-brand or rebrand the Station Defendants' service stations, even if the Plaintiff made no attempt to de-brand or rebrand said service stations, same would not result in a violation of the Supply Contracts.

## *The Wrongful Termination of Supply Contracts*

44. On or around March 11, 2025, via letter to Plaintiff, Station Defendants purported to terminate the Supply Contracts, with immediate effect. A true and correct copy of the March 11, 2025, letter is attached hereto as **Exhibit "D"** (the "Supply Termination Letter").

45. Such purported termination was without prior proper written notice or the opportunity to cure, as required under the Supply Contracts.

46. The Supply Termination Letter alleges to terminate the Supply Contracts under the following bases:

    (a) Failure of Plaintiff "to meet the requirements of [the TLA] for sale of Conoco-branded gasoline products at service stations supplied by [Plaintiff] and for the use of the Conoco trademark, trade names, service marks, trade dress, all point of sale material and other brand imaging[], including under the [Supply Contracts]"

    (b) Plaintiff "failed to complete the necessary replacement and installations to bring each of the [Station Defendants' service stations] in compliance with the brand image standards required . . . under Paragraph XIV(a) of the [Supply Contracts]."

47. Such bases for Station Defendants' termination of the Supply Contracts are pretextual, false, inaccurate, and/or ineffective.  Contrary to Station Defendants' allegations:

(a) Section I(b) of the Supply Contracts is the only provision of the Supply Contracts which provides for the unilateral termination of the Supply Contracts by the Station Defendants.

(b) Section I(b) of the Supply Contracts requires Station Defendants to provide prior written notice of any intention to terminate the Supply Contracts.

(c) Station Defendants failed to provide proper prior written notice of termination of the Supply Contracts.

(d) Plaintiff has never failed to provide motor fuels to Station Defendants as required of it under the Supply Contracts.

(e) Station Defendants pretextually terminated the Supply Contracts to enter into motor fuel supply contracts with third party suppliers at a lower price than provided by Plaintiff.

(f) Defendants wrongly, intentionally, and/or otherwise prevented, interfered with, and/or precluded Plaintiff from de-branding and/or rebranding the Station Defendants' service stations.

(g) Even if Plaintiff did not attempt to de-brand or rebrand the Station Defendants' service stations, the violation and/or termination of the TLA would not result in a breach of the Supply Contracts.

*Late Fees Due from Defendants*

48. Pursuant to Section VII(a) of the Supply Contracts, "[Plaintiff] is not obligated to extend credit to [Station Defendants], irrespective of any course of dealing or trade. If [Plaintiff] does extend credit to [Station Defendants] in its sole discretion, such extension of credit is subject to requirements that [Plaintiff's] standard credit terms and such additional terms and conditions as [Plaintiff] may establish with [Station Defendants]".

10

49. Pursuant to Section VII(c) of the Supply Contracts "EFT [electronic funds transfer] for gasoline, EPOS, etc. shall be next day."

50. Pursuant to Section VII(d) of the Supply Contracts, "[Plaintiff] has the right to impose a service and late payment charge for each check and/or EFT which is dishonored for insufficient or uncollected funds, whether or not subsequently paid by [Station Defendants]".

51. Plaintiff established a $50.00 per day fee for late payments due under the Supply Contracts.

52. Throughout the entire term of the Supply Contracts, Station Defendants, rarely, if ever, timely paid for the motor fuel supplied by Plaintiff.

53. Rather than make daily EFT payments to Plaintiff, Station Defendants usually made monthly wire payments for amounts due to Plaintiff under the Supply Contracts.

54. Such wire payments are both late and in breach of the Supply Contracts.

55. As of the date hereof, Station Defendants owe more than $200,000 in late fees to Plaintiff.

*Improper and Fraudulent Sourcing of Motor Fuel from Non-Permitted Sources*

56. Pursuant to Section III(a) of the Supply Contracts, "During the Term [Station Defendant] agrees to purchase ALL its motor fuel and requirements directly from [Plaintiff] and not from any other person or entity" (capitalization in original).

57. Pursuant to Section XXII(a) of the Supply Contracts, "if [Station Defendant] purchases fuel from any other supplier, person, or entity, it will trigger an automatic breach".

58. Beginning on or around March 11, 2025, and continuing through the date hereof, Station Defendants began sourcing, procuring, and/or otherwise receiving their supply of motor fuel from a third party, Creative Management, Inc., rather than Plaintiff.

11

59. Notably, Station Defendants entered into contracts or other agreements to source, procure, and/or otherwise receive their supply of motor fuel from Creative Management, Inc., much **_prior_** to the date of the Station Defendants' purported termination of the Supply Contracts.

60. Upon information and belief, Defendants' supply agreement with Creative Management, Inc., provides for the supply of motor vehicle fuel to Station Defendants' service stations at a lower price than from Plaintiff.

61. Thus, Defendants concocted a pretext and wrongfully terminated the Supply Contracts to save on the cost of their motor fuel supply.

*Receipt of Real Estate Benefit*

62. Plaintiff, through its contractual ability to direct the record owner Realty Income Corporation, was the owner or otherwise the seller of the real property located at 5643 Ridge Avenue, Philadelphia, PA (the "Property").

63. On or around the fall of 2020, the Property was listed for sale at or around $3,500,000.

64. Plaintiff received a bona fide offer to sell the Property to a third party for the price at or around $3,500,000.

65. However, the Property was instead sold to Defendant 5643 Ridge Avenue LLC on November 18, 2020, at the heavily discounted price of $1,243,566 (the "Discount Price").

66. To compensate for the heavily discounted Discount Price for the Property, the Defendants agreed to, and caused the Station Defendants to enter into, and fulfill their obligations under, the Supply Contracts, wherein the Plaintiff would serve as the exclusive supplier of motor fuels to the Station Defendants' three service stations for the entire ten-year term of the Supply Contracts.

12

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION – BREACH OF CONTRACT
(Against Station Defendants)

67. Plaintiff repeats, realleges, and incorporates by reference each allegation set forth above as if set forth in full herein.

68. The Supply Contracts constitute valid and enforceable contracts between Plaintiff and the Station Defendants.

69. The Station Defendants breached the Supply Contracts by:

(a) Wrongfully terminating the Supply Contracts without proper notice.

(b) Wrongfully terminating the Supply Contracts without a permissible basis under the Supply Contracts.

(c) Failure to make timely payments for motor fuel.

(d) Failure to make payments for late fees.

(e) Failure to de-brand and/or rebrand the Station Defendants' motor fuel service stations as directed by Plaintiff.

(f) Sourcing, procuring, and/or receiving motor fuel from third party suppliers.

70. As a result of Station Defendants' breaches of contract, Plaintiff has been damaged in an amount to be determined by the court, but no less than $75,000, and presently estimated at approximately $15,000,000.

13

## SECOND CAUSE OF ACTION – UNJUST ENRICHMENT
(Against Station Defendants)

71. Plaintiff repeats, realleges, and incorporates by reference each allegation set forth above as if set forth in full herein.

72. Pursuant to its obligations under the Supply Contracts, Plaintiff provided and supplied Station Defendants with motor fuel to their service stations.

73. Plaintiff fully performed its obligations under the Supply Contracts.

74. Station Defendants benefitted from Plaintiff's supply and delivery of motor fuel to their service stations.

75. Station Defendants wrongfully failed and refused to promptly pay Plaintiff for amounts due under the Supply Contracts, including late payments.

76. Station Defendants deprived Plaintiff of the anticipated revenue and profits to be earned from the performance and completion of the Supply Contracts.

77. Station Defendants' benefits based upon the aforementioned would be unconscionable and/or inequitable for Station Defendants to retain at Plaintiff's expense.

78. Station Defendants have been unjustly enriched by receiving and retaining the benefits of provision and supply of motor fuel without making timely and full payment in return. It would be unjust and inequitable to allow the Station Defendants to benefit in this manner.

79. Station Defendants have otherwise been unjustly enriched by Plaintiff's fulfillment of the Supply Contracts, based upon Station Defendants' failure to fulfill their obligations under the Supply Contracts.

14

## THIRD CAUSE OF ACTION – UNJUST ENRICHMENT
(Against All Defendants)

80. Plaintiff repeats, realleges, and incorporates by reference each allegation set forth above as if set forth in full herein.

81. Defendants acquired the Property from Plaintiff at a significantly discounted price in exchange for Defendants causing the Station Defendants to enter into, and fulfill their obligations under, the Supply Contracts.

82. Plaintiff, through its affiliate, sold the Property to Defendants at a significant discount.

83. Plaintiff fully performed its obligations under the Supply Contracts.

84. Defendants benefitted from the sale of the Property at a significant discount.

85. Defendants wrongfully terminated the Supply Contracts and otherwise failed to fulfill their obligations under the Supply Contracts.

86. Defendants deprived Plaintiff of the anticipated revenue and profit from the sale of the Property at or near the listing price, or otherwise higher than the Discount Price.

87. Defendants' benefits based upon the aforementioned would be unconscionable and/or inequitable for Defendants to retain at Plaintiff's expense.

88. Defendants have been unjustly enriched by receiving and retaining the benefits of receiving the Property at the Discount Price while failing to fulfill their obligations under the Supply Contracts. It would be unjust and inequitable to allow the Defendants to benefit in this manner.

15

**FOURTH CAUSE OF ACTION – PROMISSORY ESTOPPEL**
(Against All Defendants)

89. Plaintiff repeats, realleges, and incorporates by reference each allegation set forth above as if set forth in full herein.

90. Defendants acquired the Property from Plaintiff at a significantly discounted price in exchange for Defendants causing the Station Defendants to enter into, and fulfill their obligations under, the Supply Contracts.

91. Plaintiff fully performed its obligations under the Supply Contracts.

92. Plaintiff reasonably relied upon Defendants to fulfill their obligations under the Supply Contracts.

93. Plaintiff reasonably relied upon Defendants not wrongfully terminate the Supply Contracts.

94. Plaintiff has been harmed by the Defendants' failure to fulfill their obligations under the Supply Contracts and/or wrongful termination of the Supply Contracts.

**FIFTH CAUSE OF ACTION – COMPEL INDEMNIFICATION**
(Against Station Defendants)

95. Plaintiff repeats, realleges, and incorporates by reference each allegation set forth above as if set forth in full herein.

96. Section XIII(a) of the Supply Contracts provides, in relevant part, that:

> [Station Defendants] shall indemnify, defend and hold [Plaintiff] . . . harmless from and against any and all losses, suits, claims, demands, courses of action, liabilities, costs or expenses including reasonable attorneys' fees and costs of defense of whatever kind or nature . . . directly or indirectly arising from in whole or in part, from or as a result of the following . . . i) Any default or breach by [Station Defendants] of any obligation contained in this [Supply Contract] or any other agreement with [Plaintiff]; ii) Any violation of the Branding Covenant (as hereinafter defined); iii) Any act, omission, fault or negligence of [Station Defendants] or [Station Defendants'] agents,

16

employees, control tors, invitees or licensees, regardless of whether caused by the joint concurrent, contributory or comparative fault, negligence, breach of warranty, strict liability or breach of any legal duly whose by [Plaintiff]; . . .; iv) [Station Defendants'] use or cessation of use of the Trade Identities; [or] v) The purchase, sale, use or storage of any goods, products, equipment or other items of the [Station Defendants' service stations], or the repair, maintenance or condition of the [Station Defendants' service stations] and all equipment and fixtures appurtenant thereto, or the purchase or sale of any services at the facility. . .

97. Station Defendants breached the Supply Contracts and are obligated to indemnify, defend, and hold Plaintiff harmless pursuant to Section XIII(a)(i) of the Supply Contracts.

98. Station Defendants violated the "Branding Covenant", as defined in the Supply Contract, through their failure or refusal to allow Plaintiff to de-brand or rebrand the Station Defendants' service stations, and are obligated to indemnify, defend, and hold Plaintiff harmless pursuant to Section XIII(a)(ii) of the Supply Contracts.

99. Station Defendants continued to use the Conoco® "Trade Identities", as defined in the Supply Contract, past the time permitted under the TLA, through their failure or refusal to allow Plaintiff to de-brand or rebrand the Station Defendants' service stations, and are obligated to indemnify, defend, and hold Plaintiff harmless pursuant to Section XIII(a)(iv) of the Supply Contracts.

100. Station Defendants have purchased, and sold, motor fuels from Plaintiff and are obligated to indemnify, defend, and hold Plaintiff harmless pursuant to Section XIII(a)(v) of the Supply Contracts.

101. Costs and expenses were incurred by Plaintiff as a result of Station Defendants' breaches, acts, errors, and omissions, and will incur further costs and expenses.

102. Station Defendants have failed and/or otherwise refused to indemnify Plaintiff as required by the Supply Contracts.

## SIXTH CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
(Against Landlord, Sigma, and Individual Defendants)

103. Plaintiff repeats, realleges, and incorporates by reference each allegation set forth above as if set forth in full herein.

104. The Supply Contracts constitute valid and enforceable contracts between Plaintiff and Station Defendants.

105. Landlord Defendants, Sigma, and Individual Defendants caused, compelled, forced, or otherwise took action, to make Station Defendants wrongfully terminate and/or fail to fulfill their obligations under the Supply Contracts.

106. Landlord Defendants', Sigma's, and Individual Defendants' actions had the purpose or intent to harm the existing contractual relationship between Plaintiff and Station Defendants.

107. Landlord Defendants, Sigma, and Individual Defendants have no privilege or justification for their actions or conduct.

108. Plaintiff has suffered actual damages as a result of Landlord Defendants', Sigma's, and Individual Defendants' conduct.

## SEVENTH CAUSE OF ACTION – FRAUD
(Against All Defendants)

109. Plaintiff repeats, realleges, and incorporates by reference each allegation set forth above as if set forth in full herein.

110. As required upon the termination of the TLA, and pursuant to its authority under the Supply Contracts, Plaintiff made several attempts to de-brand or rebrand the Station Defendants' service stations.

18

111. Plaintiff was, however, continually rebuffed in such efforts and otherwise refused access to and/or the ability to de-brand or rebrand the Station Defendants' service stations (also in violation of the Supply Contracts).

112. Notwithstanding such rebuffs, Defendants repeatedly represented to and assured Plaintiff that Plaintiff would soon be permitted to de-brand or rebrand the Station Defendants' service stations.

113. Such misrepresentation was made by Defendants with the intention that Plaintiff rely upon same and continue supplying Station Defendants with motor fuel pursuant to the Supply Contracts.

114. Plaintiff justifiably relied on such misrepresentation and justifiably assumed that Defendants would comply with the terms of the Supply Contracts.

115. Such misrepresentation by Defendants was false and made with knowledge of such falsity or was made with recklessness as to whether the representation was true or false.

116. Such falsity is demonstrated by, at or about the time Defendants made such misrepresentations, ***and prior to the purported termination of the Supply Contracts***, Station Defendants entered into a contract or other agreement to source, procure, and/or otherwise receive their supply of motor fuel from a third party, Creative Management, Inc., rather than Plaintiff.

117. The Defendants lied and had no intention of allowing the Plaintiff to de-brand or rebrand the Station Defendants' service stations.

118. While Defendants simultaneously assured the Plaintiff they would allow for de-branding and/or rebranding, and thus comply with the terms of the Supply Contract, Defendants went behind the Plaintiff's proverbial back to find another, cheaper supplier of motor fuels.

119. Plaintiff was injured by its justifiable reliance on Defendants' misrepresentations and such injury was proximately caused by such reliance.

## EIGHTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION
(Against All Defendants)

120. Plaintiff repeats, realleges, and incorporates by reference each allegation set forth above as if set forth in full herein.

121. As required upon the termination of the TLA, and pursuant to its authority under the Supply Contracts, Plaintiff made several attempts to de-brand or rebrand the Station Defendants' service stations.

122. Plaintiff was, however, continually rebuffed in such efforts and otherwise refused access to and/or the ability to de-brand or rebrand the Station Defendants' service stations.

123. Notwithstanding such rebuffs, Defendants repeatedly represented to and assured Plaintiff that Plaintiff would soon be permitted to de-brand or rebrand the Station Defendants' service stations.

124. Such misrepresentation was made by Defendants with the intention that Plaintiff rely upon same and continue supplying Station Defendants with motor fuel pursuant to the Supply Contracts.

125. Plaintiff justifiably relied on such misrepresentation and justifiably assumed that Defendants would comply with the terms of the Supply Contracts.

126. Such misrepresentation by Defendants was made under circumstances in which the Defendants ought to have known its falsity.

127. Such falsity is demonstrated that, at or about the time that Defendants made such misrepresentations, and prior to the purported termination of the Supply Contracts, Station

20

Defendants entered into a contract or other agreement to source, procure, and/or otherwise receive their supply of motor fuel from a third party, Creative Management, Inc., rather than Plaintiff.

128. Plaintiff was injured by its justifiable reliance on Defendants' misrepresentations.

## NINTH CAUSE OF ACTION – FRAUD
(Against All Defendants)

129. Plaintiff repeats, realleges, and incorporates by reference each allegation set forth above as if set forth in full herein.

130. The Defendants mispresented to Plaintiff, in exchange for obtaining the Property at the heavily discounted Discount Price, the Station Defendants would enter into, and fulfill their obligations under, the Supply Contracts, wherein the Plaintiff would serve as the exclusive supplier of motor fuels to the Station Defendants for the entire ten-year term of the Supply Contracts.

131. Such misrepresentation was material, as Plaintiff would never have sold or directed the sale of the Property at the Discount Price without the ten-year exclusive supply relationship set forth in the Supply Contracts.

132. Such misrepresentation was made by Defendants with the intention that Plaintiff rely upon same and sell or direct its affiliate to sell the Property at the Discount Price.

133. Plaintiff justifiably relied on such misrepresentation and justifiably assumed that Defendants would comply with the terms of the Supply Contracts.

134. Such misrepresentation by Defendants was false and made with knowledge of such falsity or was made with recklessness as to whether the representation was true or false.

135. Even before the purported termination of the Supply Contracts, Station Defendants entered into a contract or other agreement to source, procure, and/or otherwise receive their supply of motor fuel from a third party, Creative Management, Inc., rather than Plaintiff.

136. The Defendants received the Property at a heavy discount, but had no intention of allowing the Plaintiff to complete its ten-year exclusive supply relationship, and rather went behind the Plaintiff's proverbial back to find a cheaper supplier of motor fuels less than halfway through the term of the Supply Contracts.

137. Plaintiff was injured by its justifiable reliance on Defendants' misrepresentations and such injury was proximately caused by such reliance.

### TENTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION
(Against All Defendants)

138. Plaintiff repeats, realleges, and incorporates by reference each allegation set forth above as if set forth in full herein.

139. The Defendants mispresented to Plaintiff, in exchange for obtaining the Property at the Discount Price, the Station Defendants would enter into, and fulfill their obligations under, the Supply Contracts, wherein the Plaintiff would serve as the exclusive supplier of motor fuels to the Station Defendants for the entire ten-year term of the Supply Contracts.

140. Such misrepresentation was material, as Plaintiff would never have sold or directed the sale of the Property at the Discount Price without the ten-year exclusive supply relationship set forth in the Supply Contracts.

141. Such misrepresentation was made by Defendants with the intention that Plaintiff rely upon same and sell or direct its affiliate to sell the Property at the Discount Price.

22

142. Plaintiff justifiably relied on such misrepresentation and justifiably assumed that Defendants would comply with the terms of the Supply Contracts.

143. Such misrepresentation by Defendants was made under circumstances in which the Defendants ought to have known its falsity.

144. Even before the purported termination of the Supply Contracts, Station Defendants entered into a contract or other agreement to source, procure, and/or otherwise receive its supply of motor fuel from a third party, Creative Management, Inc., rather than Plaintiff.

145. Plaintiff was injured by its justifiable reliance on Defendants' misrepresentations.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Universal Property Services Inc., requests that the Court enter judgment against Defendants granting Plaintiff the following relief:

A. The entry of judgment in favor of Plaintiff Universal Property Services Inc. on each and every count and cause of action;

B. Enjoining Defendants from implementing or giving effect to the Supply Termination Letter or otherwise terminating the Supply Contracts;

C. Compelling Station Defendants to indemnify, defend, and hold Plaintiff harmless as required by the Supply Contracts;

D. The award of damages, including punitive damages, in the amount set by the Court;

E. The award of interest, costs of the suit, and attorneys' fees; and

F.  Such other, different, and further relief as the Court deems just and proper.

Respectfully submitted,

**MOUSTAKAS NELSON LLC**

*/s/ Douglas M. Nelson*

_____
By: Douglas M. Nelson, Esquire (PA ID. 311672)
Nikitas Moustakas, Esquire (PA ID. 336580)
Robert Hagerty, Esquire (PA ID. 43596)
255 Kings Highway East
Haddonfield, New Jersey 08033
Telephone: (856) 772-7800
Facsimile: (856) 282-5552
Email: dnelson@mnlawllc.com

*Attorneys for Plaintiff*

Dated: April 9, 2025